UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAYNEL DAVIS | CIVIL ACTION |
| VERSUS | NO: 07-4572 |
| ALLSTATE INSURANCE COMPANY | SECTION: "S" (1) |

## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Allstate Indemnity Company's "Motion for Partial Summary Judgment on Claims under Louisiana Revised Statute 22:695" is **GRANTED**. (Document #24.)

**IT IS FURTHER ORDERED** that Allstate Indemnity Company's "Motion for Partial Summary Judgment on Claims under Louisiana Revised Statute 22:658" is **GRANTED**. (Document #25.)

**IT IS FURTHER ORDERED** that Allstate's motion for partial summary judgment on the issue of double recovery is **GRANTED**. (Document #27.)

**IT IS FURTHER ORDERED** that Jaynel Davis' motion for partial summary judgment on the issue of double recovery is **DENIED**. (Document #28.)

**IT IS FURTHER ORDERED** that Allstate's motion to dismiss the claims of false

advertising and for nonpecuniary damages under La. Civ. Code art. 1998 is **GRANTED**. (Document #38.)

**IT IS FURTHER ORDERED** that Allstate's motion to strike the jury demand is **DENIED**. (Document #40.)

## I. BACKGROUND

Jaynel Davis's residence at 2106 Wellington, Slidell, Louisiana, was damaged by wind and flood as a result of Hurricane Katrina. The property was insured under a homeowner's policy issued by Allstate Indemnity Company (Allstate) and a "Write Your Own" flood policy issued by Allstate under the National Flood Insurance Program. Davis received the policy limit of $150,000 for damage to the dwelling under the flood policy. Davis received payment of $6,346.60 to repair damage to the roof and vinyl siding and $3,500 for additional living expenses under the homeowner's policy, but seeks additional compensation.

Unable to resolve the issues of compensation for the loss under the homeowner's policy, Davis filed a complaint and an amended complaint against Allstate, alleging breach of contract; failure to adjust the claim within 30 days, in violation of La. Rev. Stat. 22:658; failure to make payment within 60 days, in violation of La. Rev. Stat. 22:1220; false advertising; claims under Louisiana Value Policy Law, La. Rev. Stat. 22:695; and damages under La. Civil Code art. 1997 and 1998.

Allstate filed motions for partial summary judgment on the claims under La. Rev. Stat. 22:695, claims under La. Rev. Stat. 22:658, and the claim for breach of contract on the issue of

double recovery. Allstate also filed a motion to dismiss the amended complaint and a motion to strike Davis' jury demand. Davis filed a motion for partial summary judgment on the issue of double recovery.

**A. Motions for partial summary judgment**

    **1. Legal standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. Id. If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case. Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

    **2. Breach of contract**

### a. Other insurance

Davis argues that Allstate is not entitled to an offset for the amounts paid by the flood insurer because the homeowner's policy applies to the loss. She contends that flood insurance is "Other Insurance"[1] under the homeowner's policy; thus, her policy "eliminates the alleged flood exclusion and/or the right to offset any amounts paid on the flood policy."

Allstate argues that there is no legal basis for Davis' argument that the "Other Insurance" provision negates the flood exclusion in the policy. Allstate contends that the flood exclusion has been upheld by the United States Court of Appeals for the Fifth Circuit and the Supreme Court of Louisiana to limit liability and impose and enforce reasonable conditions on the policy obligations. See In re Katrina Canal Breaches Litig., 495 F.3d 191 (5th Cir. 2007); Sher v. Lafayette Ins. Co., 2008 WL 928486 at 7-10 (La 2008). Further, Allstate argues that the two policies do not provide coverage for the same loss; therefore, the "Other Insurance" provision does not apply. Allstate contends that the homeowner's policy excludes loss from flood, and the Standard Flood Insurance policy includes loss caused, *inter alia,* by theft, fire, explosion, wind or windstorm.

There is no dispute that damage from flood is excluded under the homeowner's policy. Because there is no coverage for damage from flood under the homeowner's policy, both policies of insurance do not cover the same loss. Accordingly, the "Other Insurance" provision

---

[1] 16. **Other Insurance.**
If both this insurance and other insurance apply to a loss, we will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance . . . .

4

does not apply, and Davis' motion for partial summary judgment on this issue is denied.

**b. Double recovery**

Allstate contends that recovery under the homeowner's policy for damage to the dwelling is limited to the difference between the pre-Katrina value of the residence and the flood insurance payments of $150,000 that Davis has already received. Allstate does not argue that further payment is not owed to Davis. The motion for summary judgment is limited to the issue of whether Davis may recover from the homeowner's policy and the flood policy an amount greater than the value of the dwelling.

"An indemnity agreement is a specialized form of contract which is distinguishable from a liability insurance policy." Black v. First City Bank, 642 So.2d 151, 155 (La. 1994). Insurance contracts against loss are contracts of indemnity. See id. An insured cannot recover an amount greater than the loss, and no double recovery is permitted. See Johnson v. State Farm Fire & Cas. Co., 2008 WL 2178059 (E.D. La. 2008); see Cole v. Celotex Corp., 599 So.2d 1058, 1080 (La. 1992) ("As a general rule the claimant may recover under all available coverages provided that there is no double recovery.")(citing 15A Couch on Insurance 2d § 56:34 (1983)). "When an insured has already received compensation for the full value of his or her property, he or she is not entitled to recharacterize as wind damage those losses for which he or she has already been compensated by previously attributing them to flood waters." Id. (citing Wellmeyer v. Allstate Ins. Co., 2007 WL 1235042 at *3 (E.D. La. 2007)) (internal quotation omitted). "A plaintiff whose property sustains damage from flood and wind can clearly recover for his or her segregable wind and flood damages except to the extent that he seeks to recover

5

twice for the same loss." Id. (citing Weiss, 2007 WL 891869 at *2)). "Plaintiffs are entitled to recover . . . any previously uncompensated losses that are covered by the homeowner's policy and which, when combined with their flood proceeds, do not exceed the value of their property." Id.

Allstate's motion for summary judgment is granted on the narrow issue that Davis may not recover twice for the same loss, and Davis' motion for partial summary judgment is denied. At trial, Davis has the burden of proving that the property sustained segregable wind damage for which she has not been compensated and that the combined proceeds of the flood and homeowner's policies do not exceed the value of the property.

### 3. La. Rev. Stat 22:695

Davis alleges that she is entitled to recover the full limits of her homeowner's policy, pursuant to Louisiana's Value Policy Law (VPL)[2] because her home was a total loss. Allstate argues that Davis' home sustained uncovered flood damage,[3] and the VPL applies in cases where

---

[2] The relevant portion of Louisiana's VPL provides:
Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer.

[3] The Allstate policy excludes loss due to flood as follows:

We do not cover loss to the property described in Coverage A–Dwelling Protection, Coverage B–Other Structures Protection, and Coverage C–Personal

the total loss was caused by a covered loss.[4]

In Chauvin v. State Farm Fire & Casualty Co., 495 F.3d 232, 237 (5th Cir. 2007), the Court of Appeals for the Fifth Circuit concluded that "the VPL does not apply to a total loss not caused by a covered peril."[5] The Court of Appeals examined two possible meanings to the language in the statute providing that "in the case of a total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property":

> 1) in the event of a total loss, an insurer is required to pay the homeowner the agreed full value of a policy as long as a covered loss causes some damage to the property, even if a non-covered peril renders the property a total loss; or (2) an insurer is only required to pay the homeowner the agreed face value of a policy when the property is rendered a total loss by a covered loss.

Id. at 239. The Court of Appeals began the discussion regarding which interpretation of the statute best conforms to the purpose of the law by examining the history of the VPL and its

---

> Property Protection caused by or consisting of:
>
> 1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

[4] Allstate argues that La. Rev. Stat. 22:695 does not apply to policies covering perils other than fire. The Supreme Court of Louisiana addressed the issue in Landry v. Louisiana Citizens Property Ins. Co., ___ So.2d ___, 2008 WL 2151827 (La. May 21, 2008). The Supreme Court noted that the "insurance industry has always assumed that the use of the term 'fire insurance policy' includes homeowners' policies." The Supreme Court of Louisiana did not resolve the matter because the result was the same in Landry whether the statute applied or not, but urged the legislature to consider the issue and make changes to the language if needed. Id. at n.10. Similarly, in this case, the result is the same whether value policy law applies to losses from fire or other than fire.

[5] The Court of Appeals assumed for purposes of the opinion that the VPL applies to non-fire perils.

operation as a form of liquidated damages.

> Valued policy laws or so-called total losses statutes dealing with Fire Ins. policies were enacted by many states in the late 1800's and early 1900's principally as a protective measure for insureds. In general, these valued policy laws require that in case of total loss to an insured's property from certain specified perils, the amount stated in the policy declarations is considered the value of the structure at the time of loss and is payable in full. In other words, if the value of property is less than the amount of insurance on a policy covering a building in a state having such a law, the insurer is precluded in most states from arguing that a lesser sum be paid, *i.e.*, actual cash value . . . .
>
>> The legislative intent of these laws was to prevent over-insurance and other abuses, that is, to keep insurers and their representatives from writing insurance on property for more than it is actually worth.
>>
>> A second reason for valued policy laws is to encourage insurers and producers to inspect risks and assist prospective insureds in determining insurable value of properties . . . . It follows that failure of an insurer to inspect a risk for valuation purposes can lead to over-insurance and can produce a moral hazard as well. In other words, if a building is insured for more than its actual worth, an insured might be indifferent about loss prevention. This situation might even give an insured an incentive to intentionally cause damage to his structure.

Id. (quoting Atlas Lubricant Corp. v. Fed. Inso Co. of New Jersey, 293 So.2d 550 (La. Ct. App. 1974)). Based on the purpose of the VPL, the Court of Appeals concluded that "the VPL only requires an insurer to pay the agreed face value of the insured property if the property is rendered a total loss from a covered peril." Id. "[A] total loss resulting from a non-covered peril does not trigger the VPL." Id. n.23. "[A] finding that the statute requires insurers to pay the agreed face value of the property, even if an excluded peril (flooding) causes the total loss, runs counter to the VPL's effort to link insurance recoveries to premiums paid." Id. Further, the Court of Appeals reasoned that the focus of the VPL is on valuation, not coverage; therefore "the statute signals no intent to expand coverage to excluded perils." Id. at 240.

Although Davis alleges that the property was damaged by wind and flood and that the home is a total loss, there is no allegation that the total loss was caused by wind or any other peril covered under the homeowner's policy. Accordingly, there are no disputed issues of material fact, and Allstate is entitled to judgment as a matter of law that Louisiana's VPL does not apply.

### 4. La. Rev. Stat. 22:658

Davis contends that Allstate is subject to bad-faith penalties of 50% of the proven damages under the amended version of La. Rev. Stat. 22:658 because the claim arose after the effective date of the amendment. Allstate argues that it received satisfactory proof of loss within months after Hurricane Katrina; therefore, the cause of action arose long before the August 15, 2006, effective date of 22:658.

La. Rev. Stat. 22:658 provides a penalty for bad faith failure to pay a claim timely. In June 2006, the Louisiana legislature amended 22:658 to increase the penalty under that section from 25% to 50% of the amount the claimant is owed and to reinstate the award of reasonable attorney's fees and costs. See La. Acts No. 813 § 1. The changes went into effect on August 15, 2006, and are not applied retroactively. See Sher v. Lafayette Ins. Co., 988 So.2d 186, 197, 200-01 (La. 2008).

The law in effect at the time the cause of action arises is the law which is applied to the case. Hartenstein v. State Fair Fire and Casualty Ins. Co., 2008 WL 2397713 at *4 (E.D.La. June 10, 2008) (citing Aronson v. State Farm Fire and Cas. Co., 969 So.2d 671, 681 (La. Ct. App. 2007)). "A plaintiff's cause of action can arise in one of three ways: (1) when the complaint is

9

filed if satisfactory proof of loss was not provided prior to the filing of the complaint; (2) when the plaintiff provides satisfactory proof of loss and the defendant fails to pay; or (3) when the plaintiff has provided satisfactory proof of loss and has been paid for some damage, new damage is discovered, satisfactory proof of loss is provided to the defendant after such discovery, and the defendant fails to pay." Id. at *4. "Satisfactory proof of loss is that which is sufficient to *fully apprise* the insurer of the insured's claim." Id. at n.17 (citing McDill v. Utica Mut. Ins. Co., 475 So.2d 1085, 1089 (La. 1985)). Section 22:658 is penal and nature and must be strictly construed. See Reed v. State Farm Mut. Auto. Ins. Co., 857 So.2d 1012, 1020 (La. 2003).

To meet its initial burden of showing that there is no genuine issue for trial, Allstate presents evidence that Davis filed a proof of loss, and Allstate ordered that a check be issued to Davis for damage to the dwelling in December 2005. Between January and March 2006, Allstate was placed on notice by the Small Business Administration that Davis had a loan pending and that all payments, other than for mold or additional living expenses, must list the Small Business Administration as co-payee. Allstate alleges that Davis was paid prior to August 2006.

Davis has not put forth evidence that, after Allstate paid for some damage, new damage that was discovered for which Allstate has failed to pay. Therefore, she has not satisfied her summary judgment burden of showing that, if she is able to prove bad faith failure to pay her claim at trial, the amended version of 22:658 applies. Accordingly, Allstate's motion for partial summary judgment is granted.

**B. Rule 12(b)(6) motion to dismiss the amended complaint**

   **1. Legal standard**

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (quoting Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 & 1973 n.14 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965.

   **2. False advertising**

Davis alleges in the amended complaint that she purchased the homeowner's policy from Allstate based on the false advertisement that she would be in "good hands with Allstate." Allstate contends that Davis fails to state a claim upon which relief can be granted because the advertising is a general and subjective opinion that is incapable of being proven true or false.

La. Rev. Stat. 22:1214 provides in relevant part:[6]

> The following are declared to be unfair methods of competition and unfair or deceptive acts or practices in the business of insurance:
> . . . .
> (2) **False information and advertising generally**. Making, publishing, disseminating, circulating, or placing before the public, or causing, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in

---

[6] Davis identifies the statute in the motion to amend (document #11), but not in the amended complaint.

11

any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading.

In Rodeo v. Smith, 587 A.2d 621 (N.J. 1991), the court addressed Allstate's slogan in the context of a violation of the New Jersey Consumer Fraud Act. Much like the Louisiana Unfair Trade Practices Act, as it relates to insurance, the New Jersey Consumer Fraud Act requires an "unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment . . . of any material fact." The court held that the "slogan is not a statement of fact, and therefore cannot rise to the level of common law fraud." Id. at 624. "Nor is the slogan a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the Consumer Fraud Act." Id. "However persuasive, 'You're in good hands with Allstate' is nothing more than puffery."[7] Id.

In Bologna v. Allstate Ins. Co., 138 F.Supp.2d 310, 323 (E.D.N.Y.2001), the court addressed the plaintiff's challenge to Allstate's slogan under the false advertising provisions of section 43(a) of the Lanham Act. The court *sua sponte* dismissed the claim as frivolous and for

---

[7] The United States Court of Appeals for the Fifth Circuit has defined non-actionable "puffery" as taking two forms:
> (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion.

Pizza Hut, Inc. v. Papa John's Intern., Inc., 227 F.3d 489, 497 (5th Cir. 2000); see also Hogue v. United Olympic Life Ins. Co., 39 F.3d 98, 101 (5th Cir. 1994) (letter stating that United Olympic is a good insurance company is puffery and does not constitute promise not to raise premiums, cancel the policy, or do anything else to that effect; claim not actionable under Tex. Ins. Code art. 21.21).

failure to state a claim, concluding that "You're in good hands with Allstate" is a general, subjective statement that cannot be proved true or false. Id. at 322-23. Although the analysis was under the Lanham Act, the court cited Rodio v. Smith for the proposition that the slogan is not a statement of fact, deception, false promise, or misrepresentation, but simply puffery.

Taking the allegations in the amended complaint as true, the court concludes Davis has not raise a right to relief on her false-advertising claim above the speculative level because the Allstate slogan is subjective and amounts to mere puffery. Accordingly, Allstate's motion to dismiss the for failure to state a claim is granted.

### 3. Breach of contract under La. Civil Code art. 1997 and 1998[8]

Allstate contends that Davis failed to state a claim for damages for nonpecuniary loss as a result of bad faith failure to perform under the insurance contract.

In the amended complaint, Davis alleges as follows:

> The homeowner's policy issued by Allstate is a contract. The contract is for a nonpecuniary purpose and Allstate knew or should have known that the contract is for a nonpecuniary purpose.
> Allstate breached the contract intentionally by intentionally failing to fairly pay the claim and by intentionally failing to be the "Good Hands" people. Accordingly, plaintiff is entitled to recover contract damages, general damages, and all other damages foreseeable or not under Civil Code Articles 1997 and 1998.

"Insurance contracts in Louisiana, such as the policy at issue here, are regulated by both the Louisiana Civil Code and Title 22 of the Louisiana Revised Statutes." Dickerson v. Lexington Ins. Co., 2008 WL 5295389 *7 (5th Cir. 2008). "The Civil Code provides the general

---

[8]

law of contracts, and Title 22 fills in the specifics that are applicable to contracts of insurance." <u>Id</u>.

Article 1997 provides: "An obligor in bad faith is liable for all the damages, foreseeable or not, that are a direct consequence of his failure to perform." Article 1998 provides:

> Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
> Regardless of the nature of the contract, these damages may be recovered also when the obligor intended, through his failure, to aggrieve the feelings of the obligee.

It is a well-established principle that "nonpecuniary damages cannot be recovered for breach of an insurance contract because the contract is not intended to gratify a nonpecuniary interest" unless plaintiffs show that the insurer intended to aggrieve the feelings of the insured. See <u>Weiss v. Allstate Ins. Co.</u>, 512 F.Supp.2d 463, 474-75 (E.D.La. 2007). Under La. Rev. Stat. 22:1220, a plaintiff may recover general damages, including mental anguish, provided these damages are proven. <u>Id</u>.

Davis alleges in the amended complaint that Allstate intentionally breached the contract by failing to pay the claim, but she does not allege that Allstate intended to aggrieve or hurt her feelings. Therefore she does not raise a right to relief under article 1998.

The court notes that Davis has alleged a claim under La. Rev. Stat. 22:1220 in count two of the complaint and asserted damages for emotional distress. Article 1998 is inapplicable to La. Rev. Stat. 22:1220 and does not bar an award of mental anguish under this statute. <u>See</u>

Dickerson v. Lexington Ins. Co., 2008 WL 5295389 *9.

Accordingly, Allstate's motion to dismiss the claims in count five of the amended complaint is granted.

**C. Motion to strike jury demand**

Allstate argues that Davis failed to request a trial by jury timely, and the right has been waived. Allstate argues that the amended complaint does not introduce new issues because the new counts relate to issues raised in the original complaint.

Federal Rule of Civil Procedure 38(b) provides:

(b) **Demand**. On any issue triable of right by a jury, a party may demand a jury trial by:
(1) serving the other parties with a written demand–which may be included in a pleading–no later than 10 days after the last pleading directed to the issue is served; and
(2) filing the demand in accordance with Rule 5(d).

Davis filed a motion to amend the complaint with a jury demand, and the magistrate judge granted the motion. Allstate did not oppose Davis' motion to amend the complaint. The court finds that Davis has complied with Rule 38(b), and the motion to strike the jury demand is denied.

New Orleans, Louisiana, this  15th  day of January, 2009.

**MARY ANN VIAL LEMMON
UNITED STATES DISTRICT JUDGE**